# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LORI ANNE FRIZZELL,**

      **Plaintiff,**

v.                               **Case No: 6:16-cv-1476-Orl-DCI**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

---

## MEMORANDUM OF DECISION

Lori Anne Frizzeli (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) benefits. Doc. 1; R. 1-6, 162-67. Claimant argues that the Administrative Law Judge (the ALJ) erred by failing to properly weigh the opinions of Dr. Fermin, Dr. Cortes, and Dr. Vara. Doc. 18 at 20-27. For the reasons set forth below, it is **ORDERED** that the Commissioner's final decision is **AFFIRMED**.

## I.      THE ALJ'S DECISION

On September 1, 2012, Claimant filed an application for supplemental security income benefits. R. 162-67. Claimant alleged a disability onset date of February 6, 2005. *Id.*

The ALJ issued her decision on February 11, 2015. R. 12-21. In her decision, the ALJ found that Claimant had the following severe impairments: lumbar/cervical degenerative disc disease, fibromyalgia, an adjustment disorder with dependent personality traits, and a pain disorder associated with psychological factors and general medical condition. R. 14. The ALJ found that

Claimant had a residual functional capacity (RFC) to perform a reduced range of light work as defined by 20 C.F.R. § 416.967(b).[1] R. 16. Specifically, the ALJ found as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except the claimant is able to do detailed or simple tasks, but not complex tasks. The undersigned also determines the claimant is only occasionally able to climb ladders, ropes or scaffolds.

R. 16. The ALJ posed a hypothetical question to the vocational expert (VE) that was consistent with the foregoing RFC determination, and the VE testified that Claimant was capable of performing jobs in the national economy. R. 49-52. The ALJ thus found that Claimant was capable of performing jobs that existed in significant numbers in the national economy. R. 20-21. Therefore, the ALJ found that Claimant was not disabled between the date Claimant's SSI application was filed and the date of her decision.[2] R. 21.

## II.    STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

[2] Claimant was not eligible to receive disability for the months prior to the date she filed her application. *See* 20 C.F.R. 416.335 ("If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.").

405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.    ANALYSIS

#### A.  Failure to Properly Weigh Physician's Opinion

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of

treating, examining, and non-examining medical sources. 20 C.F.R. § 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit stated that: "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Id*. at 1178-79 (quoting 20 C.F.R. § 404.1527(a)(2)) (alterations in original). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id*. (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 416.927(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence).

"Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

### 1. Opinion of Treating Physician, Eileen Fermin, M.D.

Claimant argued that the ALJ erred by giving "little weight" to the opinions of Dr. Fermin. Doc. 18 at 20-27. Specifically, Claimant argued that the ALJ was incorrect to say that Dr. Fermin's opinions were inconsistent with Dr. Fermin's medical reports. *Id*. at 21. Claimant also argued, apparently in the alternative, that even if there was good cause for the ALJ to not give controlling weight to Dr. Fermin's opinion, the ALJ still erred by failing to grant deference to Dr. Fermin's opinions pursuant to 20 C.F.R. § 416.927(c), and that the ALJ should have recognized that a treating physician's testimony can be particularly helpful in fibromyalgia cases. *Id*. at 22-23. Finally, Claimant argued that it was error to give more weight to the opinion of the state agency medical consultant, David Guttman, M.D. *Id*. at 25-27. Claimant appeared to imply that Dr. Guttman merely checked boxes on a form. *Id*. at 26-27.

The Commissioner argued that the ALJ properly considered the medical evidence of record and gave the opinion of Dr. Fermin "little weight." *Id*. at 27-35. Specifically, the Commissioner argued that the ALJ gave good reasons for giving "little weight" to Dr. Fermin's opinions. *Id*. at 28-30. The Commissioner also argued that the mere diagnosis of fibromyalgia is not enough to show that Claimant has functional limitations, and that the medical records do not document observable signs that Claimant was in intense pain. *Id*. at 31-32. The Commissioner further argued that the ALJ did not err by giving more weight to the opinions of the state agency medical consultants because the ALJ's decision to do so was supported by substantial evidence. *Id*. at 34-

35. Finally, the Commissioner argued that the State consultants' opinions did not "consist merely of checked boxes on a form, but rather included an explanation and description of the evidence that supported their assessments." *Id*. at 34 n.11.

On February 18, 2013, Dr. Fermin completed a medical statement regarding Claimant's fibromyalgia. R. 478. The form consisted only of checked boxes without any explanation or comments. *Id*. Dr. Fermin opined, in conclusory fashion, that Claimant could not stand or sit for more than 15 minutes at a time, that Claimant could not lift any weight at all, that Claimant could never bend or stoop, that Claimant suffered from sleep disturbances, and that Claimant could occasionally raise her arms over shoulder level. *Id*. Dr. Fermin opined that the hours Claimant could work per day was "none." *Id*. Dr. Fermin indicated on the form that Claimant had pain in less than 11 pressure points and that Claimant could ambulate effectively. *Id*.

Also on February 18, 2013, Dr. Fermin completed a medical statement regarding Claimant's physical abilities. R. 479-80. The form consisted mostly of checked boxes without much explanation or comment. *Id*. Dr. Fermin opined, in conclusory fashion, that Claimant: could not stand or sit for more than 15 minutes at a time; could not lift any weight at all; could never bend, stoop, or balance; could occasionally perform fine and gross manipulation with both hands; could occasionally operate a motor vehicle; would be required to elevate her legs for the majority of an 8 hour workday; and could occasionally raise her arms over shoulder level. *Id*. Dr. Fermin noted that Claimant suffered from severe and extreme pain, and opined that Claimant would be unable to perform even sedentary duty. *Id*.

On March 8, 2013, Dr. Fermin completed a medical statement concerning depression with anxiety. R. 481-84. The form consisted only of checked boxes without any explanation or comments. *Id*. Dr. Fermin opined, again in conclusory fashion, that Claimant: suffered

deficiencies in concentration, persistence, or pace (CPP) that would result in frequent failure to complete tasks in a timely manner; would suffer repeated episodes of deterioration or decompensation in a work setting; suffered from sleep disturbances; suffered from depressive syndrome; and had moderate restrictions in activities of daily living and maintaining social functioning. *Id*. However, in contradiction to the foregoing findings made the same day, Dr. Fermin went on to opine that Claimant had *marked* restrictions in activities of daily living and maintaining social functioning. *Id*. at 482-84. Dr. Fermin also opined that Claimant had marked difficulties in maintaining CPP and that Claimant suffered from repeated episodes of decompensation, each of extended duration. *Id*.

The ALJ found that Dr. Fermin's opinions were entitled to "little weight" because her opinions were inconsistent with her own records. R. 17-18. Specifically, the ALJ provided as follows:

> The claimant complained of limitations in sitting, moving about, bending, grasping objects, and functioning caused by body pain, constant neck/back pain, [fibromyalgia (FM)], occasional upper extremity tingling/numbness, shoulder discomfort, headaches, depression, fatigue/exhaustion, memory function issues, comprehension problems, frequent IBS, anxiety, confusion, and twitching. However, the medical evidence established the claimant was able to function even with her impairments. Eileen Fermin, M.D., treated the claimant from 2012 to 2013, for FM, herniated intervertebral disc, and recurrent major depression. Dr. Fermin treated the claimant only conservatively, with medications. In addition, some medical reports reflected the claimant did not experience muscle aches, motor/sensory disturbances, anxiety, or depression (e.g., see pages 3 and 7 of Exhibit 16F). Exams of the claimant consistently revealed a normal gait/station, normal deep tendon reflexes, overall normal musculoskeletal findings, with no signs of sensory abnormalities or acute distress (e.g., see pages 3-4, 7-8, 12-13, and 18-19 of Exhibit 16F). The aforementioned medical records and objective exam results indicated the claimant was essentially stable physical as well as mentally. In October of 2012, Dr. Fermin reported that despite the claimant's medical condition, the claimant was still able to perform activities of daily living, to manage funds, to exhibit appropriate behavior, and to demonstrate appropriate thought content (see Exhibit 8F). This report supports a finding that the claimant was able to function on some level. Furthermore, on more than one occasion, Dr. Fermin noted the claimant was independent in doing activities of daily living (see pages 6, and 10 of

Exhibit 16F), which further evidenced the claimant was basically able to function. Of note, the claimant was also treated for pancreatitis, which was resolving (see page 40 of Exhibit 16F). Hence, the undersigned finds the claimant's pancreatitis is not severe. Moreover, in February of 2013, Dr. Fermin opined the claimant was unable to work one hour of a workday, stand one hour of a workday, sit one hour of a workday, lift any weight, tolerate cold, bend, stoop, balance, or work around dangerous equipment. Dr. Fermin concluded the claimant was occasionally able to raise her arms over shoulder level, do fine or gross manipulations, operate a motor vehicle, tolerate heat, or tolerate noise. Dr. Fermin further determined the claimant needed to elevate her legs most of the time, that the claimant was unable to perform sedentary work, and that the claimant possessed marked impairments in performing all areas of mental work-related activities (see Exhibits 13F, 14F, and 15F). The undersigned gives little weight to Dr. Fermin's opinion, since they seem to be inconsistent with Dr. Fermin's medical reports, which indicated the claimant was basically able to function mentally and physically (Exhibits 8F, 13F, 14F, 15F, 16F, and 18F).

*Id.* Upon review, the Court finds that the ALJ's decision to give Dr. Fermin's opinions "little weight" was supported by substantial evidence.

The Court notes that to the extent Dr. Fermin stated that Claimant is incapable of working, such statements are not medical opinions that needed to be weighed. Whether or not Claimant is capable of moving into the workforce is an issue left for the Commissioner to determine, not Dr. Fermin. 20 C.F.R. § 416.927(d); *see also Adams v. Comm'r., Soc. Sec. Admin.*, 586 F. App'x 531, 533-34 (11th Cir. 2014) (per curiam)[3]; *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (per curiam).

With regard to Dr. Fermin's opinions that did need to be weighed, substantial evidence supports the ALJ's determination that these opinions are inconsistent with Dr. Fermin's records. The extremely severe functional limitations that Dr. Fermin opined to are simply not supported by Dr. Fermin's records, which repeatedly provided, in part, that Claimant: does not have musculoskeletal symptoms; was not feeling poorly; had no head, neck, chest, or abdominal pain;

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

had no muscle aches but did have pain localized to one or more joints; had no motor disturbances or sensory disturbances; had no anxiety, depression, or sleep disturbances; was not in acute distress; was oriented to time, place, and person; presented on examination with a normal back; presented on examination with an overall normal musculoskeletal system; ambulated with no device; presented on examination with normal cranial nerves, gait, stance, and deep tendon reflexes; had no observed sensory exam abnormalities; exhibited appropriate behavior and thought content; was competent to manage funds; and was independent for activities of daily living. R. 417-44, 461-63, 486-504. The Court notes that a large majority of Dr. Fermin's records indicate that Claimant had no depression or sleep disturbances, which directly contradicts Dr. Fermin's medical statements. R. 417-44, 478-84, 486-504. Further, Dr. Fermin's records support the ALJ's assertion that Dr. Fermin treated Claimant only conservatively, with medications. R. 417-44, 486-504. Dr. Fermin also repeatedly documented that Claimant had no recent weight change despite opining that Claimant suffered from appetite disturbance with change in weight. R. 418, 422, 426, 430, 434, 438, 442, 481, 487, 491, 495, 501. The Court further notes that Dr. Fermin's opinions are internally inconsistent, as Dr. Fermin opined that Claimant had moderate restrictions in activities of daily living and maintaining social functioning, and then, on the same day, opined that Claimant had marked restrictions in activities of daily living and maintaining social functioning. R. 481-84.

To the extent that Claimant argued that Dr. Fermin's records contained findings that were consistent with Dr. Fermin's opinions, Claimant's argument is without merit. The issue is not whether there is some evidence to support Dr. Fermin's opinions, but whether there is substantial evidence when viewing the record as a whole to support the ALJ's reasons for giving Dr. Fermin's opinions "little weight." *Barnes*, 932 F.2d at 1358 ("Even if we find that the evidence

preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.") (citation omitted).

Claimant's argument that the ALJ failed to grant deference to Dr. Fermin's opinions pursuant to 20 C.F.R. § 416.927(c) is also without merit. Claimant cites to SSR 96-2p for the proposition that even if good cause exists to not grant a treating physician's opinion controlling weight, the treating physician's medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 CFR . . . 416.927." SSR 96-2p, 1996 WL 374188, *4 (S.S.A. July 2, 1996).[4] But the ALJ is not required to explicitly address each factor in her decision. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011). Here, for the reasons previously discussed, the ALJ provided sufficient reasons supported by substantial evidence for giving Dr. Fermin's opinions "little weight" pursuant to 20 C.F.R. § 416.927(c), which requires the ALJ to consider the medical evidence and explanation supporting the physician's opinion, and how consistent the physician's opinion is with the record as a whole.

To the extent that Claimant argued that the ALJ erred by not recognizing that a treating physician's opinion can be particularly helpful in fibromyalgia cases, Claimant's argument is without merit. The ALJ did not dispute that Claimant suffered from fibromyalgia. In fact, the ALJ specifically found that Claimant's fibromyalgia was a severe impairment. R. 14. However, the ALJ found that the limitations that Dr. Fermin opined to were inconsistent with Dr. Fermin's

---

[4] The Social Security Administration (SSA) rescinded SSR 96-2p on March 27, 2017. Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 27, 2017). However, the rescission is only effective for claims filed on or after March 27, 2017. *Id*. Thus, SSR 96-2p applies to Claimant's claim. *See id.*; *see also Morgan on Behalf of JC v. Berryhill*, 2017 WL 3476066, at *12 (E.D. La. June 30, 2017), *report and recommendation adopted*, 2017 WL 3456299 (E.D. La. Aug. 11, 2017); *Hall v. Berryhill*, 2017 WL 2805045, at *12 n.13 (D.S.C. June 13, 2017), *report and recommendation adopted*, 2017 WL 2797513 (D.S.C. June 28, 2017) ("The rescission is inapplicable to Plaintiff's claim because it applies only to claims filed after March 27, 2017.")

records, which provided, in part, that Claimant was in no acute distress; that Claimant had no headaches, facial pain, sinus pain, neck pain, chest pain, breast pain, or muscle aches; and that Claimant was independent in activities of daily living. R. 417-44, 486-504. The ALJ's finding, as previously discussed, is supported by substantial evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding in a fibromyalgia case that the ALJ adequately articulated specific reasons for discounting a treating physician's opinion where the ALJ articulated, in part, that the treating physician's opinion failed to account for the claimant's diverse daily activities).

Finally, Claimant's argument that it was error to give more weight to the opinion of State agency medical consultant, Dr. Guttman, is without merit. As previously discussed, the ALJ's decision to give "little weight" to Dr. Fermin's opinions is supported by substantial evidence. Likewise, the ALJ's decision to give "substantial weight" to the opinions of Dr. Guttman because they are supported by the bulk of the medical evidence is supported by substantial evidence. R. 20. In addition to the medical evidence previously discussed, other medical evidence within the record provides that Claimant was alert and cooperative; that Claimant was in no acute distress; that Claimant's cervical spine has no tenderness to palpation and full range of motion without pain; that Claimant demonstrated normal behavior; that Claimant can ambulate independently; that Claimant can perform all activities of daily living without assistance; that Claimant has normal gait; that Claimant is able to speak clearly and has appropriate affect; that Claimant's general condition was fair; that Claimant complained of only mild to moderate pain; that Claimant's range of motion was generally within normal limits; that Claimant's motor strength was 5/5 in both upper and lower extremities; that Oxycodone helps control Claimant's pain; that Claimant denies back

pain, chest pain, and neck pain; and that Claimant does not have any significant abdominal pain.[5]

R. 276, 301, 303-04, 320, 464-65, 532, 539; 557, 578-80, 615, 619-20, 623-24, 626, 629.  Further,

Dr. Guttman's opinion did not consist merely of checked boxes as implied by Plaintiff.  Rather,

Dr. Guttman's opinion contains adequate explanations.  R. 85-87.

### 2. Opinion of Treating Physician, Joyce Cortes, M.D.

Claimant argued that the ALJ erred by giving "little weight" to the opinions of Dr. Cortes.

Doc. 18 at 20-27.  Specifically, Claimant appeared to argue that Dr. Cortes's opinions were

consistent with Dr. Cortes's records.  *Id*. at 21-22.  Claimant also argued, apparently in the

alternative, that even if there was good cause for the ALJ to not give controlling weight to Dr.

Cortes's opinion, the ALJ still erred by failing to grant deference to Dr. Cortes's opinions pursuant

to 20 C.F.R. § 416.927(c), and that the ALJ should have recognized that a treating physician's

testimony can be particularly helpful in fibromyalgia cases.  *Id*. at 22-23.  Finally, Claimant argued

that it was error to give more weight to the opinion of the state agency medical consultant, David

Guttman, M.D.  *Id*. at 25-27.

The Commissioner argued that the ALJ properly considered the medical evidence of record

and gave the opinion of Dr. Cortes "little weight."  *Id*. at 27-35.  Specifically, the Commissioner

argued that the ALJ gave good reasons for giving "little weight" to Dr. Cortes's opinions.  *Id*. at

30.  The Commissioner also argued that the mere diagnosis of fibromyalgia is not enough to show

that Claimant has functional limitations, and that the medical records do not document observable

signs that Claimant was in intense pain.  *Id*. at 31-32.  The Commissioner further argued that the

---

[5] The Court notes that some of Claimant's records predate Claimant's application for SSI, but the records predating Claimant's application are largely consistent with the records postdating Claimant's application. Further, Claimant alleged a disability onset date of February 6, 2005. All of the cited records postdate February 6, 2005.

ALJ did not err by giving more weight to the opinions of the state agency medical consultant's because the ALJ's decision to do so was supported by substantial evidence. *Id*. at 34-35. The Commissioner also argued that the State consultants' opinions did not "consist merely of checked boxes on a form, but rather included an explanation and description of the evidence that supported their assessments." *Id*. at 34 n.11. Finally, the Commissioner argued that the medical statement attributed to Dr. Cortes was actually signed by Nicole Malerba, a nurse practitioner, and that the opinions of nurse practitioners are not "medical opinions" entitled to any particular deference. *Id*. at 30 n.9.

On December 3, 2014, Nicole Malerba, ARNP, completed a medical statement regarding Claimant's fibromyalgia. R. 611. Although the medical statement had Dr. Cortes's name below the signature line, the form was not signed, electronically or otherwise, by Dr. Cortes. *Id*. Instead, Ms. Malerba signed the form and printed her name below the signature line next to Dr. Cortes's name. *Id*. The form consisted only of checked boxes without any explanation or comments. *Id*. Ms. Malerba opined, in conclusory fashion, that Claimant: could not stand or sit for more than 15 minutes at a time; could lift 5 pounds occasionally and 0 pounds frequently; could never stoop; and could occasionally bend and raise her arms over shoulder level. *Id*. Ms. Malerba opined that Claimant could work zero hours per day. *Id*. Ms. Malerba indicated on the form that Claimant could not ambulate effectively. *Id*.

Also on December 3, 2014, Ms. Malerba completed a medical statement regarding Claimant's physical abilities and limitations. R. 612-13. Dr. Cortes again did not sign the medical statement. *Id*. Ms. Malerba opined that Claimant: could not stand or sit for more than 15 minutes at a time; could lift 5 pounds occasionally and 0 pounds frequently; could never stoop; could occasionally bend and raise her arms over shoulder level; could occasionally perform fine

manipulation with both hands and frequently perform gross manipulation with both hands; could

never operate a motor vehicle; would be required to elevate her legs for the majority of an 8 hour

workday; and could occasionally raise her arms over shoulder level. *Id*. Ms. Malerba noted that

Claimant suffered from severe pain, and opined that Claimant would be unable to perform even

sedentary duty. *Id*.

The ALJ attributed the foregoing opinions to Dr. Cortes and found that the opinions were

entitled to "little weight." R. 19. Specifically, the ALJ provided as follows:

> Joyce Cortes, M.D., treated the claimant, in 2013, and 2014, for neck/lower back
> DDD, FM, and irritable bowel syndrome (IBS). In June of 2014, the claimant
> reported her medications had been helping her FM as well as her back pain, and
> that she was doing much better (see page 17), which indicated the claimant's
> medical conditions were improved with treatment modalities. In September of
> 2014, it was noted the claimant's IBS was a new diagnosis, and is therefore not
> severe. In addition, the claimant's recent examinations demonstrated good
> extremity strength, with no gross focal neurological deficits or acute distress (e.g.,
> see pages 11, 14, 17, and 35), suggesting the claimant was basically able to function
> physically. Furthermore, in December of 2014, Dr. Cortes opined the claimant was
> unable to sit or stand for one hour and was able to lift five pounds occasionally and
> no pounds frequently. Dr. Cortes also concluded the claimant was unable to stoop,
> work around dangerous machinery, operate a motor vehicle, or tolerate cold, and
> that the claimant was occasionally able to bend, balance, do fine manipulations,
> raise her arms above shoulder level, or tolerate heat/dust/smoke/fumes/noise. The
> undersigned gives little weight to Dr. Cortes's opinions, since they are not
> consistent with Dr. Cortes's exam findings, with the majority of the medical record,
> or with the medical opinions of Dr. David Guttman (Exhibit 24F).

*Id*.

Upon review, the Court finds that the ALJ's decision to give "little weight" to the medical

statement was supported by substantial evidence. The majority of the medical record, which was

previously discussed with regard to Dr. Fermin's opinions, is inconsistent with Dr. Cortes's

opinions.[6] That alone is sufficient reason for the ALJ to give "little weight" to Dr. Cortes's

---

[6] The Court notes that it is not clear that the medical statements at issue represent the opinions of
Dr. Cortes. However, because there is substantial evidence supporting the ALJ's decision to give

opinions. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (per curiam) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it."); *Gilmore v. Astrue*, 2010 WL 989635, at *14-18 (N.D. Fla. Feb. 18, 2010) (finding that the ALJ's decision to discount a treating physician's opinion was supported by substantial evidence, even though two of the many reasons articulated by the ALJ were not supported by substantial evidence).

But the Court further finds that substantial evidence supports the ALJ's statement that Dr. Cortes's opinions are inconsistent with Dr. Cortes's own exam findings. Dr. Cortes's opinions depicted a Claimant suffering from extremely severe limitations, yet Dr. Cortes's records repeatedly indicated that Claimant was in no acute distress, had good extremity strength, and had no gross focal neurological deficits. R. 615-45. The Court also notes that Dr. Cortes's records indicate that Claimant was not receiving any pain management. *Id*. Dr. Cortes repeatedly recommended pain management, and noted that Claimant responded well when she took Neurontin. *Id*.

In addition, substantial evidence supports the ALJ's determination that Dr. Cortes's opinions were inconsistent with Dr. Guttman's opinions, which depicted a Claimant with much less severe limitations. R. 85-87.

To the extent Claimant argued that the records were consistent with Dr. Cortes's opinions, Claimant's argument is without merit. The issue is not whether there is some evidence to support Dr. Cortes's opinions, but whether there is substantial evidence when viewing the record as a

---

the opinions "little weight" even if they were the opinions of Dr. Cortes, the Court need not address that issue here. Thus, the Court will discuss the opinions as if they were the opinions of Dr. Cortes.

whole to support the ALJ's reasons for giving Dr. Cortes's opinions "little weight." *Barnes*, 932 F.2d at 1358 ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.") (citation omitted).

Claimant's argument that the ALJ failed to grant deference to Dr. Cortes's opinions pursuant to 20 C.F.R. § 416.927(c) is also without merit.[7] For the reasons previously discussed, the ALJ provided sufficient reasons supported by substantial evidence for giving Dr. Cortes's opinions "little weight" pursuant to 20 C.F.R. § 416.927(c).

To the extent Claimant argued that the ALJ erred by not recognizing that a treating physician's opinion can be particularly helpful in fibromyalgia cases, Claimant's argument is without merit. The ALJ did not dispute that Claimant suffered from fibromyalgia. Instead, the ALJ specifically found that Claimant's fibromyalgia was a severe impairment. R. 14. However, the ALJ found that the limitations that Dr. Cortes opined to were inconsistent with the majority of the medical records, which provided, in part, that Claimant: was in no acute distress, had no headaches, facial pain, sinus pain, neck pain, chest pain, breast pain, or muscle aches, and was independent in activities of daily living.[8] R. 417-44, 486-504. The ALJ's finding, as previously discussed, is supported by substantial evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding in a fibromyalgia case that the ALJ adequately articulated specific reasons for discounting a treating physician's opinion where the ALJ articulated, in part, that the treating physician's opinion failed to account for the claimant's diverse daily activities).

---

[7] Claimant's argument is discussed in more detail in the section regarding Dr. Fermin's opinion.

[8] Dr. Cortes's records also indicated that Claimant was in no acute distress despite the fact that Claimant was not seeing pain management at the time, and that Claimant responded well when she took Neurontin. R. 615-45.

Finally, Claimant's argument that it was error to give more weight to the opinion of State agency medical consultant, Dr. Guttman, is without merit for the reasons previously discussed in the section regarding Dr. Fermin's opinion.

### 3. Opinion of Consulting Physician, Krishna Vara, M.D.

Claimant argued that the ALJ erred by giving "little weight" to the opinion of Dr. Vara. Doc. 18 at 20-27. Specifically, Claimant argued that "[n]one of Dr. Vara's findings mentioned by the ALJ indicate Plaintiff can perform light work on a 'regular and continuing basis' because Dr. Vara did not make these observations over any length of time." *Id*. at 23-24. Essentially, Claimant argued that Dr. Vara's normal findings do not contradict Dr. Vara's opinion that Claimant is unlikely to return to gainful employment because Dr. Vara's normal findings do not establish what Claimant can do on a regular or continuing basis. *Id*. Claimant also argued that the ALJ cited no medical opinion to contradict Dr. Vara's opinion. *Id*. at 24-25. Finally, Claimant apparently argued that the ALJ is not a medical expert and thus is not in a position to disagree with Dr. Vara's opinion that Claimant is "unlikely" to return to gainful employment. *Id*.

Claimant's arguments are without merit. Dr. Vara's so-called opinion – "that this claimant is unlikely [to] return to gainful employment at this time" – is not a medical opinion that the ALJ needed to weigh.[9] Whether or not Claimant is capable of moving into the workforce is an issue

---

[9] Nevertheless, the ALJ did weigh Dr. Vara's so-called opinion and found that it was entitled to "little weight" because it is not supported by Dr. Vara's objective examination findings, which showed, in part, that Claimant: did not require assistance doing activities of daily living; was not in acute distress; exhibited normal ranges of motion, normal coordination, full extremity strength, normal sensory functions, grossly intact neurological functions, and normal reflexes; and did not require the assistance of a walking device. R. 464-68. Upon review of Dr. Vara's records, the Court finds that the reason provided by the ALJ is supported by substantial evidence. Claimant's arguments that Dr. Vara's own records cannot be used to contradict Dr. Vara's opinion and that the ALJ cited no medical opinion to contradict Dr. Vara's opinion are unavailing.

left for the Commissioner to determine, not Dr. Vara. 20 C.F.R. § 416.927(d); *see also Adams v. Comm'r., Soc. Sec. Admin.*, 586 F. App'x 531, 533-34 (11th Cir. 2014) (per curiam); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (per curiam).

And upon review, the Court finds that Dr. Vara's records do not contain any medical opinions that needed to be weighed. R. 464-68. Even to the extent that Dr. Vara's records do contain statements that could arguably be considered medical opinions, the Court finds that Dr. Vara's statements – with the exception of her statement that Claimant is unlikely to return to gainful employment – do not directly contradict the ALJ's RFC determination.[10] Thus, any error in purportedly failing to properly weigh Dr. Vara's statements would have been harmless. *See, e.g.*, *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar).

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED** follows:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

---

[10] As previously discussed, Dr. Vara's statement that Claimant is unlikely to return to gainful employment is not a medical opinion that needed to be weighed.

**DONE** and **ORDERED** in Orlando, Florida on September 25, 2017.



_____
DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE




Copies furnished to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Wendy Hunn
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Office
500 East Broward Blvd
Suite 1000, 10th Floor
Ft. Lauderdale, FL 33394